UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE PIERSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:06-CV-1240-P |
| | § | |
| MICHAEL J.  ASTRUE, | § | |
| Commissioner of Social Security,[1] | § | |
| | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed

on July 13, 2006, the subject cause has previously been referred to the United States Magistrate

Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced

by his signature thereto, are as follows:

Procedural History:  On July 2, 2003, Plaintiff filed an application for Supplemental Security

Income ("SSI") benefits alleging disability which began on April 30, 2003, due to reflex

sympathetic dystrophy.  (Administrative Record 75-78, 101 [Hereinafter Tr.].)  The

Administrative Law Judge ("ALJ") conducted a hearing on January 10, 2006.  (Tr. 485-513.)  On

February 22, 2006, the ALJ denied Plaintiff's request for SSI benefits, finding that she was not

disabled because she retained the residual functional capacity ("RFC") to perform a significant

range of light work and was capable of making a successful adjustment to work that exists in

significant numbers in the national economy.  (Tr.  18-27.)

---

[1]  Effective February 12, 2007, Michael J.  Astrue was named the Commissioner of
Social Security.  The caption is being changed pursuant to Fed. R. Civ. P. 25(d).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on

June 30, 2006, the Appeals Council denied the request.  (Tr.  4-6.)  Therefore, the ALJ's decision

became the Commissioner's final decision for purposes of judicial review.  *See Masterson v.*

*Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on July 13, 2006.   Defendant filed an answer on

September 25, 2006.  On October 9, 2006, Plaintiff filed a brief followed by Defendant's brief on

January 5, 2007.  Plaintiff filed a reply brief on January 12, 2007.

Standard of Review–Social Security Claims:  When reviewing the Commissioner's decision to

deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's

decision is supported by substantial evidence in the record and (2) whether the proper legal

standards were applied in evaluating the evidence.  *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th

Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)).  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Villa*, 895 F.2d at 1021-22

(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In determining whether

substantial evidence exists, the court reviews the entire record, but does not reweigh the

evidence, retry the issues, or substitute its own judgment.  *Villa*, 895 F.2d at 1022 (citations

omitted).  Where the Commissioner's findings of fact are supported by substantial evidence, they

are conclusive.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v.*

*Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:

To prevail on a claim for SSI benefits, a claimant bears the burden of establishing that he

2

or she is disabled, which is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C.A. § 1382c(3)(A); 20 C.F.R. § 416.905(a).  Substantial gainful activity is defined as "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled.  *See* § 416.920.  Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove that there is other substantial gainful activity that the claimant can perform.  *See*, *e.g*., *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence.  *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In this case, the ALJ proceeded to step five and determined that Plaintiff retained the capacity to perform a significant range of light work and was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (Tr. 26-27.)  He therefore denied Plaintiff's request for SSI benefits.  (Tr.  27.)

Plaintiff first argues that the ALJ erred because he failed to properly evaluate the opinions of Donna Greenman, a psychiatric mental health nurse practitioner, and Amy Valigura-Dojahn, a licensed professional counselor.  Ms.  Greenman opined in a medical source

3

statement that Plaintiff had marked limitations in responding to work pressure, to changes in the

work setting and in making judgments. (Tr. 337.) Ms. Valigura-Dojahn opined in a letter that

Plaintiff would have difficulty working. (Tr. 352.)

Under the regulations, a medical opinion regarding the nature and severity of a claimant's

impairment from a source who has regularly treated the claimant, i.e. a "treating source," should

be given controlling weight if the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the

record. § 416.927(d). If an ALJ declines to give controlling weight to a treating source's

medical opinion, the ALJ is generally required to set forth the rationale for his decision with

specific reference to the six factors listed in section 416.927(d) unless the treating source's

opinion is contradicted by other reliable first-hand evidence. *See Nelson v. Barnhart*, 67 Fed.

Appx. 252, 2003 WL 21195852, at *1 (5th Cir. 2003) (citing *Newton v. Apfel*, 209 F.3d 448, 453

(5th Cir. 2000)).

Ms. Greenman and Ms. Valigura-Dojahn, a nurse practitioner and a licensed professional

counselor respectively, are not considered "treating sources" who are qualified to render medical

opinions and their opinions, however relevant, are not entitled to controlling weight. *See* §§

416.913(a),(d); 416.927(d). Although the ALJ was required to consider the opinions of these

"other sources" under his general duty to consider all relevant evidence, *see generally* §

416.920(a)(3), he had no duty to discuss the section 416.927(d) factors when rejecting their

opinions. § 416.927(d); Social Security Ruling 06-03P, at *5 (S.S.A. Aug. 9, 2006)

(recognizing that section 416.927(d) make reference only to medical opinions from acceptable

medical sources and noting that the ALJ "generally should explain the weight given to opinions

from...'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").

A review of the ALJ's opinion reveals that he fulfilled his duty to consider the relevant evidence pertaining to Plaintiff's mental impairment and that he generally explained his reasons for rejecting the opinions of Ms. Greenman and Ms. Valigura-Dojahn.  In his opinion, the ALJ discussed Plaintiff's treatment history, which included repeated reports that Plaintiff's depression stabilized in response to medication.  The ALJ noted that Ms. Valigura-Dojahn formulated her opinion after counseling Plaintiff for only four months and that it was "not representative of the claimant's abilities once her medication was adjusted and she was stabilized."  He further found both Ms. Greenman's and Ms. Valigura-Dojahn's opinions regarding the severity of Plaintiff's mental impairment to be "not in keeping with the evidence as a whole."  In the instant case, the undersigned was able to follow the reasoning in the ALJ's decision regarding his rejection of Ms. Greenman's and Ms. Valigura-Dojahn's opinions and Plaintiff's first ground of error is without merit.

In a related argument, Plaintiff argues that the ALJ "ignored" the assessments of unnamed "treating sources" who opined that she would have difficulty working and that the ALJ had a duty to recontact these treating sources for clarification of their opinions.  As discussed above, Ms. Greenman and Ms. Valigura-Dojahn are not considered "treating sources" under the regulations and the ALJ did not "ignore" their opinions; rather he adequately articulated reasons for rejecting their opinions.  Furthermore, while Plaintiff cites section 416.912(e) in support of her argument that the ALJ had a duty to recontact Ms. Greenman and Ms. Valigura-Dojahn, this

section of the regulations applies only to treating sources and other acceptable medical sources.

*See* § 416.912(e) (imposing a duty on an ALJ to seek additional evidence or clarification from a

treating psychologist or other medical source when the source's report contains a conflict or

ambiguity that must be resolved, lacks all the necessary information, or does not appear to be

based on medically acceptable clinical and laboratory diagnostic techniques).  Even if Ms.

Greenman and Ms. Valigura-Dojahn were considered acceptable medical sources, the  ALJ

found no inadequacy in either of their reports.  Instead, he rejected their reports because they

were inconsistent with the other medical evidence in the record.  Therefore, no basis existed for

the ALJ to recontact either source.

Plaintiff also argues that the ALJ erred by failing to articulate specific reasons for

rejecting her testimony regarding the severity of her depression.  The ALJ is entitled to

determine credibility and weigh testimony, *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.

1994), and his  credibility determination is entitled to great deference, *Newton*, 209 F.3d at 459.

A review of the ALJ's opinion in this case reveals that he fully explained his decision to find her

subjective complaints regarding her mental impairment to be not entirely credible.  (Tr. 23.)  The

ALJ noted that, although Ms. Pierson testified that she feels "blurry and blah," does not feel

good about herself, becomes mad around people and stays tired all of the time; her medical

records and description of her activities of daily living did not support her allegations.  He

highlighted her testimony that she is "mentally better" with her medication, lives with her fiancé

and is able to participate in recreational activities with him, and is able to sit and concentrate on

the television for long periods of time.  (Tr. 23-24.)  He further noted that Plaintiff's medical

records supported her testimony that her mental impairment improved with medication.  (Tr. 23.)

Because the ALJ articulated several reasons for rejecting portions of Ms.  Pierson's testimony regarding her depression, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence and was rendered in accordance with the applicable legal standards.

The ALJ found that Ms. Pierson's RFC would allow her to find work that exists in significant numbers in the national economy.  Plaintiff cites *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), in support of her argument that the ALJ erred by failing to make an additional finding regarding whether she would be able to *maintain* employment.  While the Fifth Circuit found in *Watson* that the ALJ had a duty to make such a finding regarding a claimant's prospects of maintaining employment, the Fifth Circuit has limited this holding to instances where a claimant's impairment "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); see also *Perez*, 415 F.3d at 465-66 (discussing the type of evidence that triggers a *Watson* review).  Here, Plaintiff's argument that "[g]iven claimant's depression, which makes her stay home most of the time, the claimant could not maintain employment," does not meet the standard of evidence required by *Frank* and *Watson*. Therefore, this ground of error is without merit.

Finally, Plaintiff argues that the ALJ erred by failing to consider the side effects of her medications.  At the administrative hearing, Plaintiff testified that her medications made her "sleepy" and may also make her forgetful. (Tr. 494.)  While an ALJ should consider the degree to which a claimant's ability to perform work-related activities is effected by the medications she takes, *see Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000), an ALJ does not err by failing to discuss the side effects of a claimant's medications where there is no evidence that the claimant

experienced such side effects, *see Cain v. Barnhart*, 193 Fed. Appx. 357, 362, 2006 WL

2311114, at *3 (5th Cir. 2006).

Ms. Pierson asserts that the record supports her testimony that her medications impaired

her memory because she told her treatment providers on several occasions that they varyingly

made her feel "forgetful" and "sleepy." While the medical records cited by Plaintiff contain

three references to Plaintiff's "forgetfulness," (Tr. 322-25, 337-38, 350), neither Plaintiff nor her

treatment providers ever cited her medications as the cause of her memory problems. Indeed, on

one of the occasions where Plaintiff mentioned that she was forgetful, she also denied

experiencing any side effects from her medications. (Tr. 323.) Moreover, although Plaintiff

alleges that she twice complained of feeling "sleepy" as a result of her medications, the medical

evidence reveals only one such complaint—on November 13, 2003. (Tr. 371.) On the other

occasion cited by Plaintiff, a nurse noted "tolerating Lamicital, sleep and energy low—worrying

about father." (Tr. 332.) Ths notation does not unequivocally correlate a connection between

Plaintiff's sleep and low energy and her medication. Finally, Plaintiff notes that she complained

of experiencing a rash, constipation, abdominal swelling, nightmares, headaches, and a feeling of

drunkenness as a result of her medications. (Tr. 349, 364, 370, 373, 376.) However, much like

her complaints of sleepiness, Plaintiff does not cite any evidence demonstrating that she

complained of the aforementioned side effects on more than one occasion.[2] Nor did Plaintiff

report in any of these episodes that the side effects were incapacitating or significant. *See Cain*,

2006 WL 2311114, at *3 (finding no error in an ALJ's rejection of a claimant's testimony

regarding the side effects of his medications where "[t]he record contains some complaints of

---

[2] Indeed, the medical record containing her complaints of constipation and abdominal swelling notes that it was "unclear if med related." (Tr. 349.)

side effects from Cain's medications, but no significant complaints during the relevant five-year

period").  Therefore, the ALJ did not err by failing to credit Plaintiff's testimony regarding the

side effects of her medications, as there is scant evidence supporting her claims.

**RECOMMENDATION:**

For the forgoing reasons, it is recommended that the District Court enter its order

AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice.  A

copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 20th day of July, 2007.

_____

Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that
you must file your written objections within ten (10) days after being served with a copy of this
recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir.
1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and
conclusions of law within such ten (10) day period may bar a *de novo* determination by the
district judge of any finding of fact and conclusion of law and shall bar such party, except upon
grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and
conclusions of law accepted by the district court.